DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF UTAH.

*(Continued from Volume 32.)*

## CHRISTENSEN v. COLORADO INV. LOAN CO.

No. 1840.   Decided August 24, 1907 (91 Pac. 581).

1. BUILDING AND LOAN ASSOCIATIONS — CONTRACTS WITH BORROWING MEMBERS — VALIDITY — FAIRNESS. A building association advanced $200 to a member, receiving a note for $2,000, secured by a mortgage. It assumed to pay the note previously executed by him to a third person for $1,800, with 8 per cent. interest per annum, provided the member complied with an agreement which required him to pay $6,908, payable in equal monthly installments for a period of 18 years. *Held,* that the contract was unconscionable, and would not be enforced.

2. SAME — CONSIDERATION. A building association advanced $200 to a member, receiving a note for $200, secured by a mortgage. It assumed to pay a note previously executed by the member to a third person for $1,800, with interest, provided the member made the payments called for by his agreement. *Held,* that the only consideration for the note and mortgage given to the association was the $200 advanced by it, for its assumption of the note to the third person was conditioned on the member paying a sufficient amount to discharge the obligation.

3. SAME — SETTLEMENT WITH BORROWING MEMBER. A building association loaned $200 to a member, and received a note for $2,000, secured by a mortgage. It assumed to pay a note previously executed by him to a third person for $1,800, with 8 per cent. interest, provided the member made the payments called for by his agree-

ment. The member, at the time the $200 loan was made, had paid to the association $128, and thereafter he paid $1,320; $568 representing monthly installments on his stock, and $880 representing interest in accordance with the note. *Held,* that the member was entitled to a credit for $1,448, with interest on the installments paid in excess of the interest due on the note to the third person from the date of a demand for an accounting, and must be charged with $504 paid by the association to the third person and the $200 loan, with interest on $72, the amount actually advanced by the association on making the loan.

APPEAL from District Court, Salt Lake County; C. W. Morse, Judge.

Action by A. F. Christensen against the Colorado Investment Loan Company. From a judgment for plaintiff, defendant appeals.

MODIFIED.

*Grant H. Smith* and *Earnest L. Williams* for appellant.

*C. S. Patterson* for respondent.

McCARTY, C. J.

This is an action for an accounting. Judgment was rendered for plaintiff, and defendant appeals.

The defendant is a corporation organized and existing under the laws of the state of Colorado, and is doing business as a building and loan association in this and other states. The abstract of the record filed in this court contains only a part of the proceedings had in the lower court. The transcript on appeal, containing the bill of exceptions and the judgment roll, was withdrawn from the clerk's office by appellant and was not returned; the same having been misplaced or lost. Therefore the record before us is not as complete as it should be, and we have assumed to be true certain matters of a minor character not in the abstract, but referred to in appellant's brief, and over which there appears to be no contention. It appears that on December 12, 1901, a life membership certificate for twenty shares of stock of appellant

company was issued to respondent, Christensen. This stock was not loan stock, but was held by Christensen solely as an investment. Afterwards Christensen, plaintiff below (respondent here), applied for twenty shares of "Class F" stock (presumably for the purpose of enabling him to procure the loan herein referred to). While the record does not so disclose, we think it may be fairly inferred, from the subsequent transactions between the parties, that at the time he applied for "Class F" stock the respondent surrendered and had canceled the twenty shares of stock issued to him by the company on the 12th day of December, 1901, upon which he had paid $128 as dues. On the 16th day of January, 1902, respondent applied for a loan of $2,000 from appellant. On the 11th day of March, 1902, the company issued to the respondent a certificate for the twenty shares of "Class F" stock for which he had theretofore made application. Appellant procured one Stucki to lend respondent $1,800 of the $2,000 applied for. Respondent gave Stucki a note for the amount ($1,800), payable five years from the date thereof, with interest at the rate of eight per cent. per annum, secured by a mortgage on certain real estate situate in the county of Salt Lake, state of Utah. Appellant then loaned to respondent $200, the balance of the $2,000 applied for, taking his note for $2,000, secured by a second mortgage on the real estate covered by the Stucki mortgage hereinbefore mentioned. The note, so far as material here, recites: "This note is given in consideration of a loan of two hundred ($200) dollars. . . . As a part of the consideration hereof the payee herein agrees to assume and pay or discharge, for the makers hereof, on or before the maturity hereof, a certain promissory note for the principal sum of eighteen hundred ($1,800) dollars, dated. . . . It is understood and agreed that if the makers hereof shall fail, neglect, or refuse to keep and perform each and all of the covenants and agreements herein contained, or shall fail, neglect, or refuse to make any payment herein provided for, in the amount and at the time and in the manner herein provided, then the payee herein shall be under no further

legal obligation to assume or pay the said prior promissory note, or the interest thereon." After the loan was made the respondent paid $10 per month on his twenty shares of stock, for which he was supposed to receive credit on the books of the company, and in addition thereto he paid $20 per month interest, as provided for in his note and mortgage to appellant company. Forty-four monthly payments of $30 each were thus made, which amounted in all to $1,320. To this we may add the $128 paid before the loan was made, and it makes a total of $1,448 paid by respondent to appellant. Five hundred and sixty-eight dollars of this amount (including the $128 referred to) represented the monthly installments paid by respondent on his stock, and the balance ($880) the interest paid in accordance with the terms of his note to appellant. Out of the $880 thus received as interest, appellant paid the interest as it accrued on the Stucki note and mortgage, which payments were made with the knowledge and consent of respondent, and amounted in all to $504. The balance ($376, received as interest) appellant retained as interest on its loan of $200 to plaintiff and as consideration for its alleged assumption of the Stucki note and mortgage. On the —— day of December, 1905, respondent made a demand on appellant for an accounting. In answer to this demand appellant, on March 19, 1906, rendered an account or statement, which, according to appellant's construction of the contract under which the loans were obtained, showed a balance in favor of respondent of only $61.45 of the alleged withdrawal value of his stock, which sum would be payable in about one year from that date. Respondent refused to settle with appellant on that basis, and on April 6, 1906, began this action for an accounting.

The principal ground upon which respondent based his demand for an accounting was that his contract with appellant was "grossly unfair, unjust, inequitable, and unconscionable." Stating the results of the contract between appellant and respondent, as construed by appellant, in round numbers only, both as regards amounts and time, we would have the following: Respondent made 44 monthly payments

of $30 each. Ten dollars of each payment, or $440, was to be applied in maturing his stock; and $20 of each payment, or $880, was to be applied as interest on the $2,000 loan. When respondent stopped payments after 44 months, his accumulations, according to appellant, amounted to $389. If we divide this $389 by 44, the number of months respondent made payments, it will give us the exact amount each monthly payment produced toward maturing his stock, the fund with which the original debt was to be paid. This would be $8.84 each month. Taking this as a basis, it would require as many months as $8.84 is contained in $2,000, or a little over 226 months in all, to accumulate the $2,000. If we now reduce these months to years, we find that it would take 18 years and 10 months to mature respondent's stock and to pay off the original debt. To pay off the debt respondent would thus have to pay 226 times $30, which would be $6,780, to which should be added the $128 that respondent had already paid, which would bring the total payment up to $6,908. If we now assume that the appellant would carry the Stucki loan of $1,800 until respondent's stock matured or his accumulations canceled his debt, namely, 18 years and 10 months, it would require, at the rate of 8 per cent. per annum, the sum of $2,712 to pay the interest thereon. If we add this interest to the principal sum, or the original loan of $2,000, it makes $4,712; and deducting this from the entire amount that respondent would be required to pay, according to appellant's construction of the contract, it would leave a balance in the hands of appellant of $2,068 as a profit on the actual investment made by it of $72, and to secure which appellant had a second mortgage on respondent's property for $2,000. It requires no argument to show that a contract which imposes obligations so one-sided and oppressive as the one under consideration is unconscionable and ought not be upheld.

It is contended on behalf of appellant that its assumption of the Stucki note and mortgage is a sufficient consideration to uphold the unconscionable features of the contract to which we have referred. It will be seen, however, by an examina-

tion of the "assumption" clause contained in the note, that appellant incurred no liability whatever, and that its promise to pay the Stucki note was, in effect, made conditional upon respondent continuing to make regular monthly payments of $30 each. When respondent ceased making these payments, appellant's liability, if any existed, for the payment of the Stucki note, ceased. In other words, appellant in effect agreed to eventually pay the debt represented by the Stucki note and mortgage and canceled the $200 loan it made to respondent, provided he would pay into its treasury a sufficient amount of money to discharge these obligations and give appellant a bonus of $720, which bonus, however, according to appellant's construction of the contract, would, as we have shown, amount to nearly three times $720 by the time respondent's stock matured. In the case of *Cain v. Reeve and the Colorado Investment Loan Co.* (appellant herein), 30 Utah 56, 83 Pac. 568, this court, in construing a contract the same as the one under consideration, held that money thus received by the company in excess of the amount required to pay the interest on the loan could not be retained by it as consideration for the conditional assumption of that portion of the loan made by a third party, which assumption involved neither risk nor liability on the part of the company. It follows, from what we said in that case, that the only consideration for the note and mortgage given by respondent to appellant was the $200 advanced by the latter to make up the loan of $2,000 applied for by respondent.

Counsel for appellant have devoted much space in their brief to the discussion of the status of a withdrawing member and the respective rights and obligations existing between such member and the company, and they insist that the company should be permitted to account and settle with respondent for the money received from him on the terms and conditions provided in its by-laws for the settlement with withdrawing members generally. The record in this case is so meager and unsatisfactory that we refrain from in any way passing upon the question involving the rights and liability of a withdrawing member as fixed by his contract of member-

ship.   Our conclusions in this case are based entirely upon appellant's own construction of the contract, and for the purposes of this case we have assumed that the contract is open to the construction placed thereon by appellant.   This being so, it is so harsh, oppressive, and unconscionable that the whole contract must be held bad, and appellant required to account to respondent as for money had and received.

Therefore, as we view the case, respondent is entitled to credit for $1,448 paid by him to appellant, and should be charged with the $504 paid by appellant on the Stucki mortgage and the $200 loan made by appellant to respondent, with interest on $72 at the rate of eight per cent. per annum, making a total debit of $705.20.   Interest is allowed on the $72 only because, at the time appellant made the $200 loan, it had in its possession $128 of respondent's money, and therefore it actually advanced only $72 out of its own funds; and the interest is computed on the theory that respondent was entitled to have the $18 paid as monthly installments in excess of the interest due on the Stucki note applied on the $72 as the payments were made.   It would take four months to thus pay off the $72; and, applying the rule of partial payments, the interest in round numbers would be about $1.20. The difference between the amount respondent paid ($1,448) and the $705.20 with which he should be charged is the sum to which he was entitled at the time he made his demand for an accounting, on which sum ($742.80) he is entitled to interest at the rate of eight per cent. per annum from the time the demand was made, December, 1905, to the entry of judgment, and as to such amount the judgment of the court below is affirmed.   The difference between the result which we have arrived at and the amount for which judgment was entered by the trial court is probably due to the fact that the trial court may have allowed interest on that portion of the different installments paid in excess of the interest due on the Stucki note from the time such payments were made. However that may be, we think that interest should be allowed only from the date of the respondent's demand for an accounting, in December, 1905.

The cause is therefore remanded, with directions to the trial court to modify its findings and judgment, so as to correspond with the views herein expressed. Each party to pay his costs on this appeal.

STRAUP and FRICK, JJ., concur.